UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Crim. No. 10-CR-30008-MAP |
| | ) | |
| v. | ) | |
| | ) | |
| MANI M. BATCHU, | ) | |
| also known as "Mark Taylor," | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS AND OTHER EVIDENCE

The United States of America, by Carmen M. Ortiz, United States Attorney for the District of Massachusetts, through the undersigned Assistant U.S. Attorney, hereby submits the Government's Supplemental Opposition To Defendant's Motion To Suppress (Document 54).

The Court has requested supplemental briefing on the following issues: (1) whether the officers who provided Miranda warnings to the defendant were required to include in their warnings that the defendant had the right to stop talking at any time; (2) whether at the time of the defendant's initial arrest and administration of the Miranda warnings, the police were required to ask him if he wished to waive his rights before questioning him; and (3) whether the defendant's subsequent conversation concerning his messenger bag and MacBook constituted an interrogation. See Transcript of Proceedings, February 25, 2011 ("Tr. 02/25/11"), at 57-58.

First, the police were not required to warn the defendant that he had the right to stop talking at any time. Instead, Miranda only requires that a defendant "be apprised of his 'right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him if he so desires.'" United States v. Jackson, 544 F.3d 351, 355 (1st Cir. 2008) (citation omitted). Because

1

the police provided these warnings, the defendant's statements (and the subsequent seizure and search of his MacBook) should not be suppressed.

Second, the police were not required to ask the defendant if he wished to waive his rights before questioning him. To the contrary, as the Supreme Court has held, "after giving a *Miranda* warning, police may interrogate a suspect who has neither invoked nor waived his or her *Miranda* rights. On these premises, it follows that the police were not required to obtain a waiver of [defendant's] *Miranda* rights before commencing the interrogation." Berghuis v. Thompkins, 130 S.Ct. 2250, 2264 (2010). Because the defendant received and understood his Miranda warnings, his "uncoerced statement constitutes an implied waiver of the right to remain silent." Id. at 2262. Because the defendant waived his rights, the defendant's statements (and the subsequent seizure and search of his MacBook) should not be suppressed.

Third, the government cannot maintain that Batchu's statements regarding his computer was not a response to interrogation. See Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90, 64 L.Ed.2d 297(1980) (defining interrogation). Nonetheless, because Batchu received, understood, and did not invoke his Miranda rights, but instead made an uncoerced statement to the police, his statements (and the subsequent seizure and search of his MacBook) should not be suppressed.

1.   Factual Background

   a.   Testimony of Detective Rita O'Leary.

Chicago Police Department ("CPD") Detective Rita O'Leary testified that on June 9, 2009, she and Det. Joan Burke arrived at Batchu's place of employment, where he worked as a doctor, to effect an arrest warrant issued from Amherst, MA concerning his illicit relationship with Minor A.

2

Transcript, February 24, 2011 ("Tr. 02/24/11"), at 17.[1] The detectives met Batchu at the office reception area and escorted him to a more secluded area to avoid embarrassing him. Det. O'Leary first informed Batchu that they had an arrest warrant issued from Amherst, MA and then immediately advised him of his constitutional rights. Id. at 19. In particular, she informed him "[t]hat he has the right to remain silent, that anything he says can be used against him in a court of law, that he has a right to an attorney, and if he can't afford an attorney, one will be provided." Id. at 62. She then asked Batchu if he understood the rights, he said he did, and he did not say anything else at that time. Id. She provided him with the Miranda warnings orally, he appeared to understand what she was saying, he did not have any language barrier, and he did not have any questions concerning the substance of the Miranda warnings. Id. at 20.

After arresting Batchu and informing him of his Miranda rights, Det. O'Leary escorted him to their squad car, where they handcuffed him. Id. at 21. Batchu's demeanor was "calm" - "it was as if we were asking him to go to the store with us." Id. At the squad car, Batchu "requested that we go to his other office to get a bag of his with some papers" that he said contained patient information, which he did not want left in his office. Id. The defendant "was begging us to get this bag. He really wanted us to get that bag." Id. at 22. The detectives agreed to get the bag. Id.

Based upon her conversations with the Amherst Police Department ("APD"), Det. O'Leary understood that Batchu had used a computer with Minor A, and that this computer would be helpful in the APD's case. Id. at 22-23. When Batchu asked if the detectives could get his bag from his office, Det. O'Leary asked if his computer was in his bag or in his office. Id. at 23. Batchu said no,

---

[1] On May 29, 2009 at this same location, Det. O'Leary had previously served Batchu with a protective order concerning Minor A. Batchu appeared to read the order and understand it, and he accepted it without difficulty. Tr. 02/24/11 at 16.

3

"'[b]ut I'll give you the computer, it's at my residence. If we could drop the bag off at my residence, I will give you the computer.'" Id.; see id. at 63-65.

The detectives then drove Batchu to his office, where he executed a consent to search form for the messenger bag. Id. at 24-28; Government Exhibit 9. Batchu then told Det. O'Leary where to find his office, but she had difficulty located the room, so she called Det. Burke, who had remained in the squad car with Batchu, and Batchu directed Det. O'Leary to his office. Id. at 29. Det. O'Leary found the office, recovered the bag, and returned to the squad car. Id. at 29-30. The trio then drove to Batchu's apartment building, where Batchu executed a second consent to search form for his computer, which was a MacBook. Id. at 31-33; Government Exhibit 10. It was Batchu who had suggested both bringing the messenger bag to his residence and obtaining the MacBook from his residence. Id. at 36. Batchu consented to their entry into his residence, unlocked the door to his apartment, and showed the police where the computer was located, which was in plain view. Id. at 36-38.

On the way from Batchu's residence to the police station, Batchu engaged in general conversation with Batchu. Id. at 40. This conversation was not meant to elicit any evidence concerning the case in Amherst, since the detectives had not received any specific request to conduct an interview. Id. at 41. In this conversation, Batchu stated that he flew to Connecticut to meet Minor A and that she was the first Caucasian female that he had been with. Id. at 42. At some point, the detectives conducted a custodial search of Batchu's wallet, located a photograph, and asked who was in the photograph; Batchu replied that it was Minor A. Id. at 43.

At the police station, the detectives contacted the APD and asked if they should interview Batchu; the APD replied that they did not. Consequently, the detectives did not interview Batchu

4

that day. Id. at 44, 45. On the morning of June 10, 2009, Assistant U.S. Attorney Breslow called Det. O'Leary and requested that the detectives interview Batchu. Id. at 46. The detectives met Batchu at the courthouse, provided another set of Miranda warnings, and interviewed Batchu, who made numerous incriminating statements regarding Minor A. Id. at 47.

At the courthouse, Det. O'Leary read the Miranda rights verbatim from her procedural manual, and consistent with the manual, asked Batchu if he understood each of the specific rights and advised him that he had the right to stop questioning at any time. Id. at 81; Defense Exhibit B. At the courthouse, Det. O'Leary asked Batchu if he wished to speak to the detectives, which she did not do during his arrest at his office the day prior. Id. at 84-86.

At no point on June 9, 2009 or on June 10, 2009 did Batchu invoke his Miranda rights, and his demeanor was "calm and collected" as he spoke with the detectives. Id. at 51.

    b.       Testimony of Detective Joan Burke.

Similarly, Detective Joan Burke testified that on June 9, 2009, Det. O'Leary advised Batchu of his Miranda rights; Batchu indicated that he understood those rights; Batchu did not ask any questions concerning the Miranda rights; and Batchu appeared to "completely" understand the Miranda rights. Id. at 104-06. Det. Burke had an opportunity to observe Batchu's demeanor and gauge his intellect, and he appeared to be "a gentleman. He spoke with us very politely, and didn't ask a lot of questions. He was just very nice." Id. at 106. The defendant never affirmatively invoked his rights to silence or to an attorney. Id. at 107.

The detectives accompanied Batchu to their squad car, where Batchu asked them to retrieve patient papers from another office. Id. at 107-08. The detectives agreed to do so, and drove him to his office. Id. at 108. After Batchu executed a consent to search form for the messenger bag, Det.

O'Leary entered the office building to retrieve the papers while Det. Burke remained with Batchu in the squad car. Id. at 109-10; Government Exhibit 9. After Det. O'Leary located the office, she retrieved the files from his desk and returned to the car. Id. at 111.

Reunited with Det. Burke and Batchu, Det. O'Leary asked Batchu if a computer at the desk belonged to him; Batchu responded that the computer belonged to the hospital, his computer was at home, and if the detectives needed the computer, "he would be willing to give us his computer if we would just take this bag containing this information back to his house for him." Id. at 112.

The detectives drove Batchu to his apartment building, where Batchu executed a consent to search form for the MacBook. Id. at 114-16; Government Exhibit 10. Batchu accompanied them to his apartment, brought the bag into his apartment, and handed them a computer that was in plain view on a table. Id. at 116.

The detectives then drove Batchu to the police station, and conversed with Batchu. Det. Burke knew that the APD had asked them not to discuss the case with Batchu, who "was starting conversations about it, and we had to retract the conversation and kind of explain that we didn't know anything and that we were just assisting someone else, and that's why we were there." Id. at 118-19. Nonetheless, Batchu volunteered certain information about Minor A. Id. at 119.

On June 10, 2009, the detectives met Batchu again at the courthouse, where Det. O'Leary "advised him of his Constitutional rights, that he had a right to an attorney, and that anything he said to us could be used against him . . . and that he had a right to remain silent." Id. at 121. Batchu indicated that he understood those rights and then agreed to speak with the detectives about Minor A. Id. According to Burke, at the courthouse, "[Batchu] said that he wanted to speak with us. I believe he wanted to speak with us the day before, but we did not speak with him. . . . He began to

6

verbalize it in the car, and we couldn't discuss it at that point." Id. at 125.

2.   Detective O'Leary Properly Advised Batchu Of His *Miranda* Rights On June 9, 2009.

   a.   Principles of Law

The Supreme Court's decision in Miranda v. Arizona, 384 U.S. 436, 478-79 (1966) and its progeny make clear that only four specific warnings are necessary to comply with the Constitution:

> [W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, . . . the following measures are required. **He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.** Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement.

Miranda, 384 U.S. at 479 (emphasis added); United States v. Jackson, 544 at 356 (reciting four Miranda warnings).

The Supreme Court has "never insisted that Miranda warnings be given in the exact form described in that decision." Duckworth v. Eagan, 492 U.S. 195, 202 (1989); see California v. Prysock, 453 U.S. 355, 359-60 (1981) (stating that " Miranda itself indicated that no talismanic incantation was required to satisfy its strictures."); Miranda, 384 U.S. at 479 (1966)  (stating that "[t]he warnings required and the waiver necessary in accordance with our opinion today are, *in the absence of a fully effective equivalent,* prerequisites to the admissibility of any statement made by a defendant.") (emphasis added).  To determine whether Miranda is satisfied, a court asks whether the warning reasonably conveys a suspect's rights to him.  Duckworth, 492 U.S. at 195.

The Supreme Court reaffirmed the Miranda rule's essential four requirements in Florida v.

Powell, --- U.S. ---, 130 S.Ct. 1195, 1203 (2010) (stating that "Miranda prescribed . . . **four** now-familiar warnings"). In Powell, the defendant challenged the validity of a Miranda form that did not expressly state that the defendant had a right to counsel *during* questioning. Id. at 1200.[2] The Court found that the warning was sufficient, explaining that

> The four warnings Miranda requires are invariable, but this Court has not dictated the words in which the essential information must be conveyed. See California v. Pryscock, 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981) (*per curiam*) ("This Court has never indicated that the rigidity of Miranda extends to the precise formulation of the warnings given a criminal defendant." (internal quotation marks omitted); Rhode Island v. Innis, 446 U.S. 291, 297, 100 S.Ct. 1682, 65 L.Ed.2d 297 (1980) (safeguards against self-incrimination include "Miranda warnings . . . or their equivalent."). In determining whether police officers adequately conveyed the four warnings, we have said, reviewing courts are not required to examine the words employed "as if constructing a will or defining the terms of an easement.

Id. at 1204.

      b.      Detective O'Leary Properly Advised Batchu Of His *Miranda Rights*

Det. O'Leary testified that on June 9, 2009, she advised Batchu of his Miranda rights immediately after informing him that he was under arrest based upon a warrant issued from Amherst, MA concerning his relationship with Minor A. Transcript, February 24, 2011 ("Tr. 02/24/11"), at 18-19. In particular, she informed him "[t]hat he has the right to remain silent, that anything he says can be used against him in a court of law, that he has a right to an attorney, and if he can't afford an attorney, one will be provided." Id. at 62. She then asked Batchu if he understood

---

[2] The form stated: You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview." Id. at 1200.

8

the rights, and he said he did. Similarly, Det. Burke testified (albeit without elaboration, since this issue had not been presented prior to the hearing) that Det. O'Leary advised Batchu of his Miranda rights, and Batchu indicated that he understood those rights.

The Court should reject the defense attempt to embroider onto the "four now-familiar warnings," Powell, 130 S.Ct. at 1203, an unwarranted fifth warning - namely, that the police were required to caution the defendant that he had the right to stop talking at any time. The warnings administered by Det. O'Leary reasonably conveyed to Batchu his Miranda rights. A reasonable suspect who had just received the rights administered by Det. O'Leary would "not come to the counterintuitive conclusion" that although he had the right to remain silent prior to questioning, this right would evaporate forever once he began to speak. Id. at 1205. Instead, the suspect would reasonably assume that he since he could invoke his right to silence before questioning, he could do so at any point after the questioning began. Indeed, the rights administered by Det. O'Leary contained no temporal limit whatsoever, but were instead conveyed absolutely. See id. (stating that "[n]othing in the words used indicated that counsel's presence would be restricted after the questioning commenced.").

Other courts have rejected virtually identical challenges. United States v. Scaggs, Nos. 08-50492, 08-50493, 2010 WL 1646493, 377 Fed. Appx. 653, 656 (9th Cir. Apr. 26, 2010) (unpublished); United States v. Jones, No. 09-CR-00110, 2010 WL 1628049 (N.D. Ohio Apr. 7, 2010). As the Ninth Circuit held in Scaggs:

> [B]ecause the investigator advised David that he had the right to remain silent, his failure to state that David could terminate questioning at any time did not render the Miranda waiver unknowing. "[A] defendant need not be informed of a right to stop questioning after it has begun." United States v. Lares-Valdez, 939 F.2d 688, 689 (9th Cir.1991).

9

Scaggs, 2010 WL 1646493, at *2, 377 Fed. Appx. at 656.

In Jones, the police had advised the defendant as follows: "You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have a right to an attorney. If you can't afford an attorney, one will be provided to you free of cost." 2010 WL 1628049 at *17. The defense argued that this recitation was deficient because the police "failed to inform defendant that he had the right to stop the questioning at any time." Id. The court flatly rejected this claim:

> Defendant's contention that Sgt. Johnson's *Miranda* warning was deficient because Sgt. Johnson failed to tell defendant explicitly that he had the right to stop the questioning at any time is erroneous. Sgt. Johnson's statement that defendant had the right to remain silent reasonably conveyed to defendant his Fifth Amendment right against self-incrimination, informing defendant that he was not required to answer any question that police might pose to him. Indeed, as can be seen above, Sgt. Johnson's formulation of defendant's *Miranda* rights closely resembles the Supreme Court's statement of the warning in *Miranda* and does not omit any right required by that case. Moreover, Sgt. Johnson's formulation of the warning required by *Miranda* better resembles the Supreme Court's formulation than does the version that defendant alleges is required by law. Although defendant asserts that "you have the right to stop answering at any time" is a warning that is legally required, he cites no authority for this assertion. Rather, he cites *Powell* for the proposition that a warning which includes such a formulation is adequate. (Supplemental Brief at 6). That a particular formulation is adequate in no way warrants the conclusion that it is required. Sgt. Johnson's warning omitted nothing required by law and reasonably conveyed the rights specified in *Miranda*. Thus, defendant's contention that Sgt. Johnson's warning was deficient is erroneous.

Id. at *17-18.

As in Scaggs and Jones, the Court should conclude that Det. O'Leary's warnings fully satisfied the requirements of Miranda. The mere fact that the CPD Interrogations manual directs the police to advise a suspect that his rights to remain silent and to consult with counsel continued

10

throughout the questioning[3] does not invalidate Det. O'Leary's Miranda warnings, since the manual does not confer constitutional rights and, in any event, is sorely outdated with an issue date of October 30, 1987.

3.  Batchu Waived His Miranda Rights On June 9, 2009 By Speaking With the Detectives, Who Were Not Required To Obtain An Explicit Waiver

    a. Principles Of Law

It is well-settled that "[t]he prosecution does not need to show that a waiver of Miranda rights was express. An 'implicit waiver' of 'the right to remain silent' is sufficient to admit a suspect's statement into evidence." Berghuis, 130 S.Ct. at 2261 (quoting North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979)). As the Supreme Court emphasized in Berghuis, "Butler made clear that a waiver of Miranda rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" Id. (citation omitted).

Consequently, "[w]here the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Id. at 2262. Miranda thus "does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights." Generally, "the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford."

---

[3] The CPD manual directs police to state additionally: "If you choose not to remain silent and do not wish to consult with a lawyer present, you still have the right to remain silent and the right to consult with a lawyer at any time during the questioning." CPD G.O. 87-07, Interrogations: Field and Custodial, § IX.A.5 (Issued October 30, 1987).

Id.; United States v. Verdugo, 617 F.3d 565, 577, n.2 (1st Cir. 2010) (noting that Berghuis recognized that a suspect who received, understood, and did not invoke his Miranda rights waives the right to remain silent by making an uncoerced statement to the police); United States v. Contreras, No. 08-10219-GAO, 2010 WL 3258379, *7 (D. Mass. 2010).

      b.      Batchu Understood His Rights, Which He Waived By Speaking With The Detectives.

Here, the record establishes that Batchu understood his Miranda rights, did not invoke those rights, but rather waived them by speaking with the detectives.

First, the evidence is undisputed that Batchu was a highly educated professional with no language barriers who behaved calmly and stated that he understood his Miranda rights.

Second, Batchu did not invoke his Miranda rights. As in Berghuis, Batchu "did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his 'right to cut of questioning.' Here he did neither, so he did not invoke his right to remain silent." Id. at 2260 (citation omitted).

Third, Batchu waived his right to remain silent by speaking with the detectives. It was Batchu (and not the detectives) who initiated the conversation about the messenger bag and it was Batchu again who then voluntarily suggested that he provide his MacBook to the detectives when they took him to his residence. As the Court stated:

> I do find that once the computer is mentioned Mr. Batchu immediately said, "I'll give you the computer when you drop off the papers at my house. . . . Once they asked him questions or made an inquiry about the computer, Mr. Batchu's response was, according to both of them, and I find it credible, "You can have the computer." They didn't say, for example, and I find that they didn't say, "Give us the computer and we'll get your papers," or "Give us the computer or we're going to get it anyway," or "Where's your computer? We want to get it, so tell us where it is." There was nothing affirmative like that.

Tr. 02/25/11, at 59-60. As the Court put it, "Mr. Batchu . . . voluntarily agreed to give up the computer . . . I find that he did." Id., at 60.

If Batchu had wanted to remain silent, "he could have said nothing in response" to Det. O'Leary's inquiry about the computer "or he could have unambiguously invoked his Miranda rights and ended the interrogation." Berguis, 130 S.Ct. at 2262. He did neither. Accordingly, the record establishes that Batchu "waived his right to remain silent. There is no basis in this case to conclude that he did not understand his rights; and on these facts it follows that he chose not to invoke or rely on those rights when he did speak." Id.

Finally, there is no evidence that Batchu's statements were coerced. See id. at 2263. Indeed, the undisputed record establishes that the detectives did not employ coercion, that Batchu was calm and collected, and that he voluntarily spoke with the detectives on a day when he twice executed written consents to search his property.

4. <u>Even If Batchu's Statements On June 9, 2009 Should Be Suppressed As Unwarned, His Statements On June 10, 2009 Are Admissible</u>

In the unlikely event that the Court were to suppress Batchu's any or all of statements on June 9, 2009 as insufficiently warned and involuntary, the Court should still admit Batchu's confession on June 10, 2009. In Oregon v. Elstad, the Supreme Court held that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waving his rights and confessing after he has been given the requisite Miranda warnings," at least where the initial statement was not obtained through "actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will." 470 U.S. 298, 309, 318, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985); United States v. Jackson, 608 F.3d 100, 103-04 (1st Cir. 2010) (holding that

13

defendant's decision to waive his Miranda rights at the police station was knowing, intelligent, and voluntary and his statements were therefore admissible even though he had made earlier unwarned statements at his apartment).

5.      Conclusion

The Court should deny the First Motion's request to suppress post-arrest statements made on June 9, 2009 and June 10, 2009 to the CPD, because each set of statements was made after Batchu knowingly, intelligently, and voluntarily waived his Miranda rights.  Similarly, the Court should deny the First Motion's request to suppress the search of the First MacBook since the CPD seized the laptop pursuant to Batchu's valid, written consent and since the government searched the laptop only after obtaining a search warrant.

                                                Respectfully submitted,

                                                CARMEN M. ORTIZ
                                                United States Attorney


                                                  /s/ Steven H. Breslow
                                                STEVEN H. BRESLOW
                                                Assistant United States Attorney

Dated: March 25, 2011


## CERTIFICATE OF SERVICE

Hampden, ss.                                    Springfield, Massachusetts
                                                March 26, 2011

    I, Steven H. Breslow, Assistant U.S. Attorney, hereby certify that the foregoing was filed by ECF and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                         /s/ Steven H. Breslow
                                         STEVEN H. BRESLOW
                                         Assistant United States Attorney