UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.        )<br>)<br>MANI M. BATCHU,      )<br>    also known as "Mark Taylor,"   )<br>)<br>    Defendant.   ) | Crim. No. 10-30008-MAP<br><br>GOVERNMENT'S SENTENCING<br>MEMORANDUM |

The United States of America, by and through Carmen M. Ortiz, United States Attorney for the District of Massachusetts, and Steven H. Breslow, Assistant United States Attorney (the "Government"), hereby files its Sentencing Memo for the defendant Michael J. Armitage (the "defendant").

I.  Introduction

On May 9, 2011, the defendant pleaded guilty to the following counts of the above-captioned Indictment:

1. Count One: Transportation Of A Minor To Engage In Criminal Sexual Activity, in violation of 18 U.S.C. § 2423(a);

2. Counts Two through Four: Interstate Travel For The Purpose Of Engaging In Illicit Sexual Conduct With A Minor, in violation of 18 U.S.C. § 2423(b); and

3. Count Five: Use Of Facility Of Interstate Commerce To Entice A Minor To Engage In Criminal Sexual Activity, in violation of 18 U.S.C. § 2422(b)).[1]

---

[1] The Government had previously dismissed Counts Seven and Eight, and has agreed to dismiss Count Six following the imposition of sentence at the sentencing hearing.

The defendant faces the following statutory mandatory minimum and/or maximum terms of imprisonment: ten years to life on Counts One and Five; and five years to thirty years on Counts Two through Four. Presentence Report dated November 16, 2011 ("PSR"), ¶ 134. The defendant's advisory sentencing guidelines range is 324 to 405 months. PSR ¶ 135. The defendant also faces a supervised release term of between five and life. PSR ¶¶ 139-40. The Court must also order restitution for the full amount of the victim's losses as determined by the Court. PSR ¶ 149; 18 U.S.C. § 2259(a). Lastly, the defendant faces a maximum fine of $250,000 on each count of conviction and a guidelines fine range of $25,000 to $250,000. PSR ¶¶ 143-44.

The Government recommends that the Court impose the following sentence:

1. 360 months of incarceration;

2. 365 months of supervised release with the special conditions specified below;

3. Restitution of $5,946,540, based upon $477,506 in reimbursable expenses, $1,932,660 in expected mental health therapy; $3,287,329 in present value of lost future earnings, and $249,045 in lost Social Security benefits; and

4. $500 in special assessments.

II.   The Defendant Merits A Guidelines Sentence Of 360 Months

In this case, a Guidelines sentence best represents the statutory sentencing goals articulated in 18 U.S.C. § 3553(a). As the Supreme Court observed in Rita v. United States, 127 S.Ct. 2456, 2463 (2007), the sentencing judge and the Sentencing Commission are carrying out "the same basic 3553(a) objectives, the one at retail, the other at wholesale." In other words, the Sentencing Commission's guidelines are a "rough approximation of a sentence that might achieve § 3553(a)'s objectives." Id. at 2465. Because of the seriousness of the defendant's offenses, the need to incapacitate him to

prevent further harm to child victims, and the absence of any mitigating circumstances, the defendant should receive a Guidelines sentence.

    A.    <u>The Nature and Circumstances of the Offense</u>

The nature and circumstances of the defendant's serious offenses warrant a Guidelines sentence. <u>See</u> 18 U.S.C. § 3553(a)(1).

    1.    <u>The Defendant's Offenses</u>

At the time of his offenses, the defendant was a 29 year-old licensed physician and a second-year resident in psychiatry at the University of Illinois at Chicago, with an interest in adolescent psychiatry. PSR ¶ 10.

In approximately August 2008, the defendant met a 15-year old female, Minor A,[2] while online. Using the alias of "Mark Taylor," a false photograph of a young man, and a false age, the defendant groomed Minor A for sexual exploitation through a lengthy series of e-mails, instant messages, text messages, phone calls, gifts, and cards. The defendant then proceeded to commit the following series of statutory rapes of Minor A:

    1.    May 1-2, 2009 in Hartford, Connecticut (involving his interstate transportation of Minor A);

    2.    May 23, 2009 in Amherst, Massachusetts (which occurred after the defendant was warned that Minor A's family had reported the earlier episode to the police);

---

[2] The names of the minor victim and her family members have been redacted to protect their privacy.

3. July 22-25, 2009, in Sebastian and Vero Beach, Florida (which occurred not only after the defendant was served with two Massachusetts restraining orders prohibiting contact with Minor A, but also after he was arrested and arraigned in two state statutory rape cases in Massachusetts and Connecticut based on the prior episodes, and released on the condition that he not contact Minor A).

4. August 3, 2009, in Hadley, Massachusetts (which occurred the day before the defendant was scheduled to appear in court in the Connecticut case).

PSR ¶ 8.

In addition to these contact offenses, the defendant also recorded his cybersex sessions with Minor A and at least two other minor females (Minor B and Minor C), and accessed or possessed hundreds of other videos and images of child pornography on two successive laptop computers. PSR ¶ 9.

Moreover, the defendant not only deceived Minor A through a series of lies, but after the onset of the instant federal investigation and prosecution, he lied to the police, advised Minor A to lie, and submitted two false affidavits to this Court. For example, on July 25, 2009, on the final day of the defendant's surreptitious visit to Florida, he told Minor A that she could refuse to testify against him and that if anyone ever asked, she should deny having sex with him. The defendant's ploy achieved temporary success, as Minor A did subsequently deny engaging in sexual conduct with the defendant. PSR ¶ 44. Further, on August 3, 2009, after the Hadley Police Department ("HPD") located the defendant at the Hampshire Mall in close proximity to Minor A (with whom he just had illicit sexual contact), the defendant falsely told the HPD that he was in the area for a Connecticut court case, and then falsely explained that he had traveled to the mall so that he could eat at Fuji Chen, which was a

fast-food restaurant in the mall's food court. PSR ¶ 47. Lastly, in a vain attempt to convince this Court to suppress his post-arrest statements and evidence seized on his MacBook in Chicago, the defendant submitted affidavits that this Court recognized contained portions "which are clearly not true or certainly shaky." PSR ¶¶ 26-27.[3]

Here, the nature and circumstances of the offense require a Guidelines sentence, particularly given: (a) the terrible harm to Minor A (and her family) and the other child victims in the defendant's large collection and (b) the defendant's commission of the instant offense while under strict and repeated court orders to have no contact with Minor A.

> 2. The Terrible Harm To Minor A, Her Family, And The Other Child Victims
>
>   a. The Harm To Minor A And Her Family

As the Victim Impact Statements of Minor A and her family members demonstrate, the defendant has caused longstanding harm.[4]

Minor A's brother stated that the defendant's crimes "created wounds that will never be healed." Minor A "has a hard time performing her daily tasks. Her level of trust in people has permanently been damaged." "This violation of my sister has consumed my family's thoughts and priorities" and contributed to the suicide of Minor A's other brother. "I feel as though it is immoral and unfair to let this man have the chance to ever ruin another young woman's life and should be put

---

[3] The defense has objected to the PSR's two-level enhancement for obstruction of justice, see PSR at 39 (Objections 2 and 4), but the Plea Agreement clearly bars this objection. Plea Agreement, at 4 ("Defendant agrees that the foregoing application of the Sentencing Guidelines is correct, except that Defendant contests the addition of two additional groups in subsection (h) and three additional levels in subsection (i) on the basis that Defendant contests that the individuals are minors.").

[4] At the time of this filing, only Minor A's brother had submitted a Victim Impact Statement, but Minor A and her mother are expected to be submitting their own statements.

away to allow the future generations to have a safe enjoyable childhood, and to keep this burden from happening to anyone else's family."

According to the Evaluation Note of Bruce Ecker, Ph.D., dated November 7, 2011 ("Note"), Minor A attempted suicide in 2009 and suffers from Post-Traumatic Stress Disorder, intermittent anxiety, dissociative episodes, and symptoms of depression.  Note, at 2.  As Dr. Ecker elaborated:

> Frightening nightmares have persisted.  She continues to fear being alone and is often on guard.  She struggles to trust anyone; she does not have close friends.  Her school attendance has been irregular, both because of fatigue and related difficulty getting out of bed and to persisting mistrust.

Id.

The defendant's abuse "has had enormous impact on her - socially, emotionally, psychiatrically, and academically."  Id.  Dr. Ecker predicts that Minor A "will probably need psychiatric treatment throughout her life," and he cautiously expects that she will need "long-term weekly psychotherapy together with pharmacotherapy sessions at less frequent intervals, both indefinitely."  Note, at 3.  Minor A's "vocational trajectory and related earning power will be much lower than it would have been were she not to have suffered molestation . . . [she] does not function as a normal adolescent and it can be expected that this will persist into adulthood."  Id.

### b. The Harm To The Defendant's Unidentified Victims

In addition, the defendant's voracious collection of child pornography has victimized the many other unidentified children captured in the videos and images maintained on his computers.  As the Fifth Circuit explained, consumers of child pornography, such as the defendant, "victimize the children depicted in child pornography by enabling and supporting the continued production of child

pornography, which entails continuous direct abuse and victimization of child subjects." United States v. Norris, 159 F.3d 926, 930 (5th Cir. 1998). Similarly, the Third Circuit also recognized:

> Congress found little distinction in the harm caused by a pedophile, be he a distributor or mere consumer in child pornography, because the mere 'existence of and traffic in child pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children.'

United States v. MacEwan, 445 F.3d 237, 250 (3rd Cir. 2006) (citation omitted).

Moreover, "[c]hild pornography invariably produces great shame and guilt in the children involved, especially as they get older and more fully comprehend the enormity of their abuse and know that there is a permanent record of their degradation." Dr. Victor B. Cline, Pornography's Effects on Adults & Children, Morality in Media (2001).[5] Thus, "the 'victimization' of the children involved does not end when the pornographer's camera is put away." Norris, 159 F.3d at 929.

### 3. The Defendant's Flouting Of Court Orders

The defendant engaged in much of his shocking offense conduct while subject to court orders barring him from having any contact (much less sexual contact) with Minor A, thus effectively recidivating repeatedly. As courts have recognized, "The recidivist's relapse into the same criminal behavior demonstrates his lack of recognition of the gravity of his original wrong, entails greater culpability for the offense with which he is currently charged, and suggests an increased likelihood that the offense will be repeated yet again." United States v. De Luna-Trujillo, 868 F.2d 122, 125 (5th Cir. 1989) (holding that the similarity between the defendant's prior offense and his instant offense provided a reason to enhance a criminal sentence under § 4A1.3); United States v. Chavez-Botello, 905 F.2d 279, 281 (9th Cir. 1990) (same); see United States v. Merino, 44 F.3d 749, 756 (9th

---

[5] http://www.moralityinmedia.org/pornsEffects/clineart.htm, at 6.

1994) (holding that district court properly considered defendant's repeated commission of the same offense, which made a mockery of the system of justice).

Here, the government is not asking for a Section 4A1.3 enhancement based upon the defendant's recidivism, but urges the Court to consider this very important factor in applying a Guidelines sentence.

  B. <u>History and Characteristics of the Defendant</u>

The personal characteristics of the defendant weigh in favor of a Guidelines sentence. <u>See</u> 18 U.S.C. § 3553(a)(1).

First, the defendant's history indicates an unquenchable sexual appetite for children (and Minor A in particular), coupled with a patent and persistent disregard for the law. Thus, while the defendant has not been previously arrested or convicted, the lack of criminal history weighs only marginally in the defendant's favor, if at all, particularly where he persistently flouted a permanent restraining order and two pre-trial release orders issued by state courts in Massachusetts and Connecticut. As the district court explained in <u>United States Hollender</u>, 162 F.Supp.2d 261, 267 (S.D.N.Y. 2001), "As to his character and past conduct, given the nature of the charges and the evidence thus far disclosed by the Government, which strongly suggests that Hollender has been involved in nefarious activities for some time, I can hardly place too much weight on such matters as his lack of a prior arrest record."

Against this backdrop of virtually uncontrollable criminal activity, the defendant's personal history suggests no mitigating explanation for the defendant's misconduct. If anything, the defendant's personal history suggests that he has had a longstanding interest in children, particularly adolescents. See, e.g., PSR, ¶ 118 (defendant was member of Pediatrics Club for 2003-07). The defendant is

bright, well-educated, and has lived in the United States since he was two years old: he clearly knew right from wrong. PSR ¶¶ 113, 117. He has no history of alcohol or drug abuse. PSR, ¶ 116. Until his arrest in 2009, the defendant appears to have had no mental or emotional health problems. PSR, ¶115. Similarly, he has had no major physical health problems. PSR, ¶ 114.

In sum, the defendant's personal circumstances warrant a Guidelines sentence.

        C.      <u>The Need for the Sentence Imposed</u>

A Guidelines sentence is required "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(A)-(C). A Guidelines sentence is "sufficient, but not greater than necessary," to accomplish these goals. 18 U.S.C. § 3553(a).

        1.      <u>Seriousness Of The Offense, Respect For The Law, And Just Punishment</u>

First, a Guidelines sentence would reflect the grave nature of the defendant's offenses. As the Supreme Court has recognized, "the exploitative use of children in the production of pornography has become a serious national problem" and "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." <u>New York v. Ferber</u>, 458 U.S. 747, 749, 757-58 (1982). Second, a Guidelines sentence would promote respect for the law, particularly where the defendant chose to flout court orders by contacting Minor A. Third, a Guidelines sentence will reflect just punishment, where the harm to Minor A will persist for decades to come.

        2.      <u>Deterrence And Protection Of The Public</u>

"In deciding the likelihood that a defendant may commit other crimes, a court may take into account any evidence of obvious incorrigibility and conclude that leniency has not been

effective." United States v. Hacker, 450 F.3d 808, 812-13 (8th Cir. 2006) (citation omitted); see also United States v. Kriesel, 508 F.3d 941, 950 (9th Cir. 2007) (noting that a defendant who violated the terms of his release by testing positive for controlled substances was "already a recidivist").

The defendant's repeated misconduct - which he committed (1) while violating pre-trial release orders in two separate state criminal cases and (2) following his receipt of temporary and permanent restraining orders - shows that he either refuses or cannot conform to social norms as established by the criminal law, or to learn from past mistakes.  The defendant conducted himself without regard for the rule of law or the vulnerable child who was the target of his crimes, making him an extremely high risk to offend again, at whatever age he is released from prison - particularly since many of the defendant's crimes can be committed with the click of a mouse button or the tap of a computer keyboard.  As the Ninth Circuit recognized:

> The particularly high danger of recidivism of sex offenders is well-known and has been used to support various other laws, such as sex-offender registration requirements.  See Smith v. Doe, 538 U.S. 84, 102-03, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003); see also McKune v. Lile, 536 U.S. 24, 34, 122 S.Ct. 2017, 153 L.Ed. 2d 47 (2002) (risk of sex-offender recidivism is "frightening and high").

United States v. Garner, 490 F.3d 739, 743 (9th Cir. 2007).

A Guidelines sentence is necessary to incapacitate the defendant, who poses a clear danger to Minor A and other child victims.

D. <u>Supervised Release</u>

The Government recommends 365 months of supervised release, with the following special conditions:

1. Defendant shall not contact, directly or indirectly, any victim, including Minor A, or family member of any victim, of the charged offenses;

2. Defendant shall promptly notify the Probation Department of any contact, direct or indirect, by any victim, including Minor A, or family member of any victim, of the charged offenses;

3. Defendant shall "submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communications, or data storage devices or media, and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct by the person, and by any probation officer in the lawful discharge of the officer's supervision functions," pursuant to 18 U.S.C. § 3583(d);

4. Defendant shall participate in a sex offender specific treatment program, and shall be required to submit to periodic polygraph testing as a means to ensure that he is in compliance with the requirements of this therapeutic program;

5. Defendant shall not engage in any occupation, business, or profession that would require him to have direct or indirect supervision of any person under the age of 18, and Defendant shall not have unsupervised contact with any person under the age of 18;

6. Defendant shall not possess a computer and/or related materials except as deemed necessary by the Court or the Probation Department for work purposes;

7. Defendant shall allow the U.S. Probation Office to install software designed to monitor computer activities on any computer Defendant is authorized to use;

8. Defendant shall have no use of the Internet at his home, work, or elsewhere, unless the United States Probation Office determines otherwise;

9. Defendant shall be prohibited from viewing or possessing any kind of pornography or sexually explicit materials;

10. Defendant shall report his address, and any subsequent address changes, to the Probation Office;

11. Defendant shall register as a sex offender as required under federal and state law in any state where he resides, is employed, carries on a vocation, or is a student; and

12. Defendant shall use his true name and is prohibited from the use of any false identifying information, which includes, but is not limited to, any aliases, false dates of birth, false social security numbers, and false places of birth.

In the Plea Agreement, the defendant agreed that "the imposition of any supervised release term should be no less than 15 years and in any event should include all of the special conditions specified above." Plea Agreement, at 7.

E. Restitution

The government support's the restitution request of Minor A's mother, who is her legal

guardian, which seeks a total of $5,946,540, based upon $477,506 in reimbursable expenses (including costs associated with time spent by Minor A's mother in the capacity of Minor A's legal guardian and costs associated with the suicide of Minor A's brother), $1,932,660 in expected mental health therapy; $3,287,329 in present value of lost future earnings, and $249,045 in lost Social Security benefits.

Title 18, United States Code, Section 2259 provides for mandatory restitution relating to the defendant's offenses. Section 2559(a) provides: "Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter." 18 U.S.C. § 2559(a). Section 2559(b)(1) provides that "[T[he order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2)." 18 U.S.C. § 2559(b)(1).[6]

Section 2559(b)(3) defines the term "the full amount of the victim's losses" as including any costs incurred by the victim for:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. § 2559(b)(3).

Section 2559(b)(4) provides that "the issuance of a restitution order under this section is

---

[6] Section 2559(b)(2) provides that the order of restitution "shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." 18 U.S.C. § 2559(b)(2).

mandatory" and that the "court may not decline to issue an order under this section because of - (i) the economic circumstances of the defendant; or (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source." 18 U.S.C. § 2559(b)(4)(A) and (B).

The term "'victim' means the individual harmed as a result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, . . . the legal guardian of the victim . . . another family member, or any other person appointed as suitable by the court . . . ." 18 U.S.C. § 2259(c). Thus, the fact that a parent is not the direct victim of the defendant's abuse and exploitation is of no consequence.

The purpose of the statute's reference to "legal guardians" is to permit restitution of costs that legal guardians of minor victims, acting in their capacity as legal guardian, incurred as a result of an offense. See United States v. Tsosie, 639 F.3d 1213, 1220 (9th Cir. 2011) (holding that mother's expenses incurred in her capacity as legal guardian in traveling to see victim could be subject to restitution, even if the mother made trips in her capacity as loved family member because treatment plan required "minor crime victim [to have] added emotional support of a loved family member to assist in the recovery process").[7] But see United States v. Wilcox, 487 F.3d 1163 (8th Cir. 2007) (holding that a defendant convicted of sexual abuse of a minor in violation of 18 U.S.C. §§ 2242-2243 could not be ordered to pay restitution for the sexually abused child's mother's lost income.).

Section 2259 authorizes compensation for the minor victim's future counseling expenses. United States v. Pearson, 570 F.3d. 480, 486 (2d Cir. 2009); United States v. Doe, 488 F.3d 1154,

---

[7] While Tsosie addressed the interpretation of 18 U.S.C. § 2248(c), that statutory language is the same as 18 U.S.C. § 2259(c), and the court's logic of the Court is applicable here.

1159-60 (9th Cir. 2007); United States v. Danser, 270 F.3d 451, 455 (7th Cir. 2001); United States v. Julian, 242 F.3d 1245, 1246-48 (10th Cir. 2001); United States v. Laney, 189 F.3d 954, 966-67 (9th Cir. 1999); United States v. Crandon, 173 F.3d 122 (3rd Cir. 1999). As the Ninth Circuit explained in Laney, "section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address long term affects of their abuse." 189 F.3d at 966.

In Tsosie, the Ninth Circuit discussed, but did not expressly decide, whether a legal guardian's own counseling is recoverable:

> The text of § 2248(c) is open to at least one of two readings. On the first reading, urged by the government, the definition is something of a blunt instrument: The statute "includ[es]" a legal guardian within the definition of "victim"; therefore any loss incurred by the legal guardian of a minor as a result of an offense is subject to restitution. On this reading, if the victim's legal guardian became depressed upon learning of the offense and so had to attend counseling sessions, the cost of that counseling would be subject to restitution. On the other, narrower, reading, the provision permits restitution only of those costs incurred by a legal guardian acting in her capacity as legal guardian—in other words, costs she incurred on behalf of the minor. Thus, for example, a legal guardian who paid for her son's medical treatment would be entitled to restitution of those costs, but she could not expect to recover the income she lost when she took a day off work because she was too distraught by her son's victimization to show up at the office. While common sense favors the latter reading, we need not, and do not, decide whether the statute is thus limited. On either of the two possible readings of § 2248(c), the mother's travel expenses may be subject to restitution.

639 F.3d at 1220.

In the context of a restitution order, the First Circuit has explained that "[t]he watchword is reasonableness. A sentencing court should undertake an individualized inquiry; what constitutes sufficient causation can only be determined case by case, in a fact-specific probe." United States v. Vaknin, 112 F.3d 579, 590 (1st Cir. 1997) (interpreting the Victim and Witness Protection Act, 18

U.S.C. §§ 3663 and 3664). "[R]estitution should not be ordered if the loss would have occurred regardless of the defendant's misconduct underlying the offense of conviction." United States v. Cutter, 313 F.3d 1, 7 (1st Cir. 2002). "This means, in effect, that the government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated (either factually or temporally)." Vaknin, 112 F.3d at 589-90.

A district court is not precluded from ordering restitution by the inability to calculate the amount owed to a victim with mathematical precision. United States v. Savoie, 985 F.2d 612, 617 (1st Cir. 1993). However, "a 'modicum of reliable evidence' is required to establish a restitution award; 'an award cannot be woven solely from the gossamer strands of speculation and surmise.'" United States v. Mahone, 453 F.3d 68, 74 (1st Cir. 2006) (quoting Vaknin, 112 F.3d at 587).

Thus, this Court must estimate the amount of future loss with reasonable certainty, in accordance with the procedures set forth in 18 U.S.C. § 3664. Laney, 189 F.3d at 967, n.14; United States v. Kennedy, 643 F.3d 1251, 1261 (9th Cir. 2011); Danser, 270 F.3d at 455-56 (concluding that the restitution figure was not plainly erroneous based on the uncertainty of the projected costs where the court held a hearing concerning the victim's need for long term counseling and had evidence of the costs of future counseling); Julian, 242 F.3d at 1248 (vacating and remanding for a hearing on the victim's need for future counseling and the estimated cost of that counseling).

A district court is given a great deal of deference to make a reasonable estimate of a victim's loss. United States v. Miguel, 49 F.3d 505, 511 (9th Cir. 1995); see United States v. Gordon, 393 F.3d 1044, 1054-55 (9th Cir. 2004) (noting that, under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, the courts have a "degree of flexibility" "to reach an expeditious, reasonable determination

of appropriate restitution by resolving uncertainties with a view toward achieving fairness to the victim in accounting for a victim's complete losses").

III.     Conclusion

For the foregoing reasons, the Government respectfully asks that the Court impose a sentence of 360 months of incarceration; 365 months of supervised release with the special conditions specified above; restitution of $5,946,540; and $500 in special assessments.

                                      Respectfully submitted,

                                      CARMEN M. ORTIZ
                                      United States Attorney


                                      /s/ Steven H. Breslow
                                      STEVEN H. BRESLOW
                                      Assistant United States Attorney

## CERTIFICATE OF SERVICE

Hampden, ss.                              Springfield, Massachusetts
                                        November 17, 2011


I, Steven H. Breslow, Assistant U.S. Attorney, hereby certify that the foregoing was filed by hand and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                      /s/ Steven H. Breslow
                                      STEVEN H. BRESLOW
                                      Assistant United States Attorney