UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Docket No. 10-CR-30008-MGM |
| v. ) | |
| ) | |
| MANI BATCHU, ) | |
|     Defendant. ) | |

## OPPOSITION TO MOTION FOR DISCOVERY

The United States of America, by and through Andrew E. Lelling, United States Attorney for the District of Massachusetts, and Alex J. Grant, Assistant United States Attorney, opposes the Motion for Discovery of the defendant, Mani Batchu.

### Background of Claims

The defendant's Section 2255 motion is based on three related grounds, all alleging improper conduct by his trial counsel Richard Foley ("Foley"): the defendant was sentenced in violation of his Sixth Amendment right to conflict-free counsel, the defendant was denied counsel contrary to the Sixth Amendment at and before sentencing, and the defendant was denied the right to effective assistance of counsel at and before the sentencing. Since the filing of these claims, counsel has been appointed to assist Batchu in this litigation.

### Legal Standard

Rule 6(a) of the Rules Governing Section 2255 Proceedings provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure." This "good cause" standard reflects the settled law that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904 (1997). The Supreme Court has found "good cause" under Rule 6(a) "where specific allegations before the court show reason

to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief." *Id.* at 908-09 (quoting *Harris v. Nelson,* 394 U.S. 286, 300 (1969)).

**Requested Discovery**

The defendant seeks (1) to depose trial counsel, Richard Foley, and (2) documents relating to counsel's billing arrangements, timekeeping, the obtaining of bail money from a Connecticut state court, and communications between trial counsel and the defendant.  The defendant's motion for discovery articulates essentially two reasons for this discovery.  First, the defendant would like to question Foley and seek records about the delay in seeking a psychological expert for sentencing and the delay in seeking the Connecticut bail money that would have allowed for payment of the expert.  Dkt. No. 208 at 4-6.  Second, the defendant wants further detail about Foley's handling of the Connecticut bail money and the money he received from Imhoff & Associates ("Imhoff") for attorney's fees and for an expert.  Dkt. No. 208 at 7-9.

**Argument**

This discovery motion goes to Batchu's claim that the absence of a psychological expert at sentencing amounted to ineffective assistance of counsel and that the absence adversely impacted the sentence he received.  The discovery motion seeks information that would not illuminate this claim any further.  As such, the motion should be denied.

*Facts Behind Alleged Delay in Retaining Expert Have Already Been Established*

It is clear from the documents on the docket why an expert's report was not submitted at the sentencing:  the district judge (Ponsor, J.) said, "Defendant has waited too long to arrange for the evaluation."  This statement explained why the district judge denied Batchu's motion to

continue the sentencing to allow for the expert to perform the evaluation on Batchu and render a report.  *See* Dkt. No. 84.

As the defendant's discovery motion and the filings on the docket show, there is *already* a clear timeline of events between the point at which the Rule 11 hearing was set (April 4, 2011) and the eventual sentencing (November 18, 2011).  The defendant criticizes Foley's alleged failure to take prompt action to secure an expert during that period of time, claiming this failure amounted to deficient performance by counsel.  During this period of time, there is a clear sequence of events:

    a.    Prior to September 8, 2011, Foley and Batchu had discussed the use of a psychological expert (Dkt. No. 133 at ¶ 5; 134).

    b.    Prior to September 8, 2011, Batchu told Foley he wanted to use Dr. Ablow, despite Foley's recommendation to use Dr. Medoff (Dkt. No. 133 at ¶ 5-6; 134).

    c.    Prior to September 8, 2011, Foley agreed to pursue Batchu's choice, Dr. Ablow (Dkt. No. 133 at ¶ 5-6; 134).

    d.    Prior to September 8, 2011, Foley made "many attempts" to contact Dr. Ablow but did not receive a response (Dkt. No. 133 at ¶ 6; 134).

    e.    On September 8, 2011, Foley told Batchu that Dr. Ablow had failed to respond and Foley sent Batchu Dr. Medoff's C.V.  (Dkt. No. 134).

    f.    Prior to September 23, 2011, Foley learned that Dr. Medoff required $8,500 (Dkt. No. 133 at ¶ 7).

    g.    On September 23, 2011, Foley met with Batchu and told his client that the $5,000 received from Imhoff was insufficient to pay Dr. Medoff, and Foley told Batchu that he would need the $9,500 in Connecticut bail money to pay Dr. Medoff (Dkt. No. 133 at ¶ 7).

  h.  At some point between October 6, 2011 and October 31, 2011, Foley received the $9,500 in Connecticut bail money (Dkt. No. 133 at ¶¶ 8-10).[1]

  i.  On October 31, 2011, Foley met Batchu at the detention facility and discussed the need to continue the sentencing because of the delay in receiving the Connecticut bail money (Dkt. No. 133 at ¶ 9).

  j.  On November 1, 2011, Foley filed a motion to continue the November 18, 2011 sentencing hearing. (Dkt. No. 84, 133 at ¶9).

  k.  On November 2, 2011, Foley deposited the $9,500 in Connecticut bail money into his trust account (Dkt. No. 133 at ¶9, 134-1).

  l.  On November 7, 2011, the district court denied the motion to continue the November 18, 2011 sentencing hearing.

  m.  On November 13, 2011, Foley filed a motion to reconsider the district court's ruling on the motion to continue (Dkt. No. 86).

  n.  On November 14, 2011, the district court denied the motion to reconsider.

  o.  On November 18, 2011, the defendant was sentenced.

The question is not whether Foley failed to act fast enough to retain an expert—the defendant has already made that claim, and that will be decided in due course. The motion for discovery raises the question of what, if anything, can be added to this detailed timeline that would bolster the defendant's claim. In reality, the defendant has all the facts he needs to pursue this claim—whether it will be successful is another story. The sequence of the events has

---

[1] Foley's motion for reconsideration (to continue the sentencing date) stated he received the money on October 6, 2011. Dkt. No. 86. Foley's affidavit states that this was in error and that Connecticut issued the check on October 6, 2011 but that he received the money later. Dkt. No. 133 at ¶¶ 9-10.

already been established.  Deposing Foley and obtaining records from him will not change the historical facts already documented by the court filings.

*The Cost Issue for the Retention of the Expert Has Already Been Established*

Batchu also seeks documents and seeks to depose Foley about the details of his billing of attorney's fees.  Again, it is hard to see how this would illuminate why the expert was not retained earlier.  The court filings have made it abundantly clear why the expert was not retained earlier.  To the extent that cost was an issue, it arose at the point when Foley abandoned his pursuit of Batchu's choice of Dr. Ablow because Dr. Ablow was not responding.  Foley then turned to Dr. Medoff, who wanted $8,500 and there was only $5,000 available from Imhoff.  Foley then sought the $9,500 in Connecticut bail money, which did not arrive in time to retain the expert sufficiently in advance of the November 18 sentencing date.  To the extent that Batchu is arguing that Foley should have embarked on this process earlier, he has all the facts necessary to make that argument.  Probing Foley's time entries and his attorney's fees will not shed further light on why the expert was not retained earlier.

*Discovery Should Not be Ordered Because Batchu Cannot Show Prejudice from Alleged Ineffectiveness of Trial Counsel*

A separate basis for denying discovery is the fact that Batchu has not shown that he suffered any prejudice, even assuming Foley rendered deficient performance.  As articulated in the government's opposition to Batchu's 2255 petition, the defendant himself does not claim, in his petitions, to have had any mental illness.  Instead, Batchu simply said in his Supplemental Petition that his relationship with Minor A was simply "very ill-considered" and that he merely "used extremely poor judgment in choosing to continue such a relationship."  [D.132, page 1].

5

Moreover, the Presentence Report (PSR) suggested nothing unusual about the defendant's mental health. "Because the psychological examination was never performed, there is no evidence on this record to suggest that a continuance would have inured to [Batchu's] benefit. …[i]t is possible that the results of such an examination would have had exactly the opposite effect." *United States v. Bergmann*, 317 F. App'x 528, 532 (7th Cir. 2008) (unpublished) (finding district court did not abuse discretion in denying Bergmann's request for a continuance to allow a psychological evaluation because Bergmann "failed to offer any proof of prejudice."); *see United States v. Stevens*, 305 F. App'x 574, 576 (11th Cir. 2008)(unpublished) (finding district court did not abuse its discretion in denying Stevens' request for a continuance for a second psychiatric examination and stating that "[t]he possibility that Stevens would have received an even shorter sentence if he had presented a second psychological report by another expert is pure speculation."). Thus, a mental health examination could have concluded that the defendant posed an ever greater recidivism risk than the district court apprehended at sentencing.

As the Seventh Circuit has observed, "*Strickland* requires more than a showing that the evidence would have been beneficial; the mere possibility of a positive effect on the trial court's sentencing decision is too speculative a basis for relief." *Andrashko v. Borgen*, 88 F. App'x 925, 929-30 (7th Cir. 2004)(unpublished)(stating that "counsel might have been able to present the mitigating factors in a more positive light, but such a possibility does not establish prejudice.").

Here, Batchu's core contention that he was prejudiced by the failure to obtain a mental health evaluation is entirely speculative. See *Rosado v. Allen*, 482 F.Supp.2d 94, 106 (D. MA 2007) ("a lawyer certainly need not consult a psychological expert in every case in which the defendant has exhibited anti-social tendencies").

**Conclusion**

The defendant's Motion for Discovery should be denied.

>Respectfully submitted,
>
>ANDREW E. LELLING
>United States Attorney
>
>   */s/ Alex J. Grant*
>ALEX J. GRANT
>Assistant United States Attorney
>300 State Street, Suite 230
>Springfield, MA 01105

**CERTIFICATE OF SERVICE**

Hampden,  ss.                                      Springfield, Massachusetts
                                                   November 26, 2018

I, Alex J. Grant, Assistant U.S. Attorney, hereby certify that the foregoing was filed through the Electronic Court Filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

>   */s/ Alex J. Grant*
>ALEX J. GRANT
>Assistant United States Attorney