UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MANI BATCHU,<br><br>    Defendant-Petitioner. | Criminal Action<br>No. 10-30008-MGM |

MEMORANDUM AND ORDER REGARDING DEFENDANT-PETITIONER'S
MOTION TO VACATE UNDER 28 U.S.C. § 2255
(Dkt. No. 126)

March 1, 2021

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

While serving a lengthy sentence of incarceration, Defendant-Petitioner, Mani Batchu, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He asserted that he had been sentenced in violation of his Sixth Amendment right to counsel because his privately retained counsel had an actual conflict of interest and was ineffective at sentencing. His petition was originally considered by the sentencing judge, who appointed counsel to assist with the petition. The case was later transferred to this court. After a significant period of discovery and the filing of lengthy memoranda by both Defendant-Petitioner and the government, this court held an evidentiary hearing on February 24, 2021 at which Attorney Richard Foley, Defendant-Petitioner's trial counsel, appeared. For the reasons set out below, the court now denies the motion for relief pursuant to § 2255.

1

## II.  SUMMARY OF RELEVANT FACTS

On April 1, 2010, a grand jury returned an eight-count indictment against Defendant-Petitioner charging him with crimes arising from him grooming and sexually abusing a fifteen-year-old child when he was around 30 years old, had completed medical school, and was working as a psychiatrist. Defendant-Petitioner continued to pursue a sexual relationship with the minor victim after learning her age and after a restraining order was entered barring him from having contact with her.

Defendant-Petitioner's family paid a $37,500 retainer to a "nationwide" referral law firm based in California, along with a $5,000 payment for anticipated expert services. The referral firm sent the case to Attorney Richard Foley, who agreed to represent Defendant-Petitioner for a flat fee of $10,000. Defendant-Petitioner's family had also previously paid money for bail in a related criminal matter in Connecticut state court. During the course of Defendant-Petitioner's federal case, $9,500 of that bail money was returned to Defendant-Petitioner.

There was large amount of evidence, including significant electronic evidence, and the case against Defendant-Petitioner was strong. On May 7, 2011, he pleaded guilty to five counts of the indictment. His sentencing was set for October 5, 2011. Pursuant to the written plea agreement, Defendant waived his right to appeal his sentence unless it exceeded 293 months. (Plea Agreem't, Dkt. No. 79, 8.)  By June of 2011, Attorney Foley had determined that Defendant-Petitioner should undergo a psychological evaluation prior to sentencing. Attorney Foley had some conversation with one potential expert, Dr. Medoff, who charged an up-front fee of $8,500. Attorney Foley does not recall having received the returned bail money at that time and, in fact, remembers that obtaining the money had been difficult. There is some evidence that a check may have been sent to him in January of 2011, but no evidence that he actually received it at that time. Defendant-Petitioner had also suggested a different expert. Attorney Foley tried to contact that individual, but his efforts were

unsuccessful. At some point during the summer of 2011, Attorney Foley appears to have requested payment to Dr. Medoff from the referral law firm, but only $48 was paid, rather than the $4,800 in available funds. Sometime in or around October of 2011, Attorney Foley received the returned bail money from Connecticut.

Meanwhile, on September 2, 2011, the government requested the sentencing be continued at the request of the minor victim's family. Defendant-Petitioner assented to the request and the sentencing was rescheduled to November 18, 2011. Counsel for Defendant-Petitioner, requested a further continuance on November 1, 2011. In his motion, Attorney Foley informed the court that an expert had been retained to conduct a psychological examination of Defendant-Petitioner, but more time was needed to conduct the evaluation because funds for the evaluation had only recently become available. The government opposed the motion because the continuance would delay closure for the minor victim and her family.

District Judge Michael A. Ponsor, denied the motion on November 7, 2011, issuing a short electronic order stating in part, "Defendant has waited too long to arrange for the evaluation." Attorney Foley filed a motion for reconsideration, which was also denied. The government filed its sentencing memorandum on November 17, 2011 and Attorney Foley filed his sentencing memorandum on November 18, 2011, the day the sentencing was held.

The court found the advisory sentencing guidelines range was 292 to 365 months. The government requested a sentence of 360 months of incarceration and 365 months of supervised release. Defendant sought a 120-month sentence. Attorney Foley argued the sentencing guidelines were not based on empirical data; Defendant-Petitioner was unlikely to recidivate; had already been punished through family losses while he was incarcerated and by losing his medical license; and would be more able to pay restitution if a shorter sentence was imposed.

At the sentencing, the minor victim's mother read a statement written by the minor victim and made a statement of her own, both describing in detail the harm Defendant-Petitioner's actions caused to the minor victim and her family. After a recess, Defendant-Petitioner addressed the court. Attorney Foley requested that Defendant-Petitioner be allowed to make his statement from the witness box rather than counsel table in order to present certain facts. Judge Ponsor expressed some concern about this unusual approach, as it opened the door to cross-examination by the government, but allowed it to go forward after cautioning Defendant-Petitioner that the stakes were quite high, but that he could proceed if that was what he, Defendant-Petitioner, wanted to do. Defendant-Petitioner made a lengthy, meandering statement that included a request (rejected by Judge Ponsor) that those in the courtroom bow their heads to the memories of both the minor victim's recently deceased brother and Defendant-Petitioner's own father. He went on to provide details of his family background and cultural history,  well as high-flown descriptions of his moral transformation subsequent to his arrest.

Following Defendant-Petitioner's statement, Attorney Foley put some questions to his client about his life at the time he met the minor victim through an online dating site. Defendant-Petitioner responded, often with lengthy answers and on several occasions, Judge Ponsor interrupted to move the questioning along. At the conclusion of the questioning, Judge Ponsor informed the government that there would be no need for cross-examination. He then sentenced Defendant-Petitioner to 365 months of imprisonment and 360 months of supervised release. Judge Ponsor explained that "a sentence at the top of the guideline range is justified both because of the course of conduct that [Defendant-Petitioner] engaged in and because of the rather sophomoric and pretentious and obliquely and carefully self-justifying little speech we just heard." (Sent'g Trans., Dkt. No. 99, 89-90.) With respect to Defendant-Petitioner's conduct, Judge Ponsor observed that video evidence reviewed by the court was at odds with Defendant-Petitioner's professed love for the

minor victim, rejected any suggestion that Defendant-Petitioner's cultural background explained his conduct, and stated that he had "not seen a more determined course of criminal conduct in 28 years on the bench." (*Id.* at 89-90.) Judge Ponsor described Defendant-Petitioner's statement to the court as "a pretentious, frothy, narcissistic performance," that struck him "as completely phony and narcissistic and self-justifying." (*Id.*)

Following sentencing, the $4,800 advanced for expert fees was returned to Defendant-Petitioner's mother and the $9,500 of returned bail money was paid to Attorney Foley as a flat fee for an appeal. Attorney Foley filed a notice of appeal, but does not appear to have done much substantive work on the appeal. When he was later replaced as appellate counsel, the file he forwarded to successor appellate counsel did not contain notes, drafts, or other similar work product related to the appeal.

### III. DISCUSSION

At the outset, the court observes that "[p]ostconviction relief on collateral review is an extraordinary remedy, available on a sufficient showing of fundamental unfairness." *Singleton v. United States*, 26 F.3d 233, 236 (1st Cir. 1994). Defendant-Petitioner argues he has met this standard by demonstrating (1) an actual conflict of interest that prevented Attorney Foley from adequately representing him at sentencing, (2) a combination of circumstances resulted in a constructive denial of Defendant-Petitioner's right to counsel during the critical stage of sentencing, and (3) Attorney Foley failed to raise an obvious and persuasive sentencing defense.

The court addresses each of these arguments in turn.

A. Actual Conflict of Interest

"'[A] defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief.'" *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis added in original) (quoting *Cuyler v. Sullivan*, 446 U.S. 335349-50 (1980)).

5

Here, Defendant-Petitioner argues Attorney Foley created a personal pecuniary conflict of interest between his obligations to represent Defendant-Petitioner at sentencing and his interest in obtaining a substantial appellate fee and that this conflict negatively impacted the quality of his representation. In support of this argument, Defendant-Petitioner asserts that Attorney Foley intentionally delayed retaining an expert to conduct a psychological examination of Plaintiff in order to ensure that there would be leftover funds to pay him a substantial flat-fee for the appeal. While counsel for Defendant-Petitioner has identified evidence of a disturbing laxity in Attorney Foley's approach to preparing for sentencing, that evidence falls short of supporting his theory that a pecuniary conflict of interest existed and caused Attorney Foley to intentionally delay obtaining an expert evaluation of Defendant-Petitioner for the purpose of ensuring there would be funds available to pay him a large appellate fee.

Several factors undercut Defendant-Petitioner's argument. First, at the time Attorney Foley was allegedly scheming to make sure there would be funds available for an appeal, it was unclear whether Defendant-Petitioner would be able to file an appeal, let alone that he would retain Attorney Foley for such an appeal. The written plea agreement, negotiated by Attorney Foley, waived Defendant-Petitioner's right to challenge his conviction on direct appeal and his right to appeal a sentence of 293 months or less. Second, while the evidence clearly shows that Attorney Foley waited an irresponsibly long time before arranging the psychological evaluation, it also supports a finding that he intended to engage Dr. Medoff to provide a psychological evaluation before sentencing. He spoke with Dr. Medoff as early as June and made some effort to obtain partial payment for Dr. Medoff over the summer. As the sentencing date approached, Attorney Foley requested a continuance. All the available evidence suggests that had the continuance been granted, Attorney Foley would have engaged Dr. Medoff for the evaluation at a cost of $8,500, leaving

significantly less money for an appeal than if Attorney Foley had retained a less costly expert over the summer.

Better lawyering would have included arranging the evaluation or requesting a further continuance earlier, but the effort to obtain a continuance, and by extension an evaluation, appears genuine. It actually was reasonable for Attorney Foley to anticipate the continuance request would have been granted under all the circumstances. The motion for the continuance was filed more than two weeks before the sentencing and the extension of time sought was slightly more than a month, approximately the same length as the continuance that had previously been granted to the government. Attorney Foley provided both a reason for needing the extension – to obtain the evaluation – and a reason why he had not been able to obtain the evaluation sooner – the prior lack of funds. Finally, when the motion was denied, Attorney Foley moved for reconsideration, hardly the action of an attorney relieved to have avoided incurring the expense for an evaluation.

B. Constructive Denial of Counsel at Sentencing

Defendant-Petitioner next argues the representation provided by Attorney Foley in connection with his sentencing was so lacking that Defendant-Petitioner had effectively been abandoned at sentencing. In *U.S. v. Cronic*, the Supreme Court recognized that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights." 466 U.S. 648, 659 (1984). The Court later clarified that in order for an attorney's performance to descend to this level "the attorney's failure [to test the prosecutor's case] must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). On the record before the court, it is clear Attorney Foley's efforts on behalf of Defendant-Petitioner did not fall to this level.

Attorney Foley submitted a sentencing memorandum, which was received in time for the court to review it prior to the sentencing hearing. The sentencing memorandum asked the court to impose a sentence of 120 months, well below the sentence requested by the government and below

7

the guidelines range. Attorney Foley argued a shorter sentence was warranted because of shortcomings with the way the sentencing guidelines were developed. He also argued that Defendant-Petitioner background, including his lack of criminal history, warranted a sentence shorter than the guidelines range and that such sentence would be sufficient because Defendant-Petitioner's background made it unlikely he would recidivate. Finally, Attorney Foley asserted a shorter sentence would increase Defendant-Petitioner's ability to pay restitution. In addition to submitting a sentencing memorandum, Attorney Foley raised objections to the presentence report and cogently argued his position during the hearing. His arguments were partially successful, resulting in a one-point reduction in the offense level. This factual record is inconsistent with any argument that there was a complete failure by Attorney Foley to test the government's case at sentencing.

In addition to recognizing the severity of a complete failure by counsel to test the prosecution's case, the court in *Cronic* also indicated that there might be situations "in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel," such that prejudice can be assumed without demonstrating specific errors by counsel that prejudiced the defendant. *Cronic*, 648 U.S. at 666. This standard is met where there are circumstances that made it unlikely any attorney could provide effective assistance. (*Id.* at 660-61.) Usually, this means circumstances external to counsel's particular performance. However, the factors identified by Defendant-Petitioner reflect choices made by Attorney Foley, including his decision not to file a motion for a departure or variance and his decision to engage in a question-and-answer session with Defendant-Petitioner following Defendant-Petitioner's statement to the court. Defendant-Petitioner acknowledges that these issues reflect a deficient performance rather than the types of criteria discussed in *Cronic*, but argues that they reach the level of a constructive denial of counsel when combined with Attorney Foley's conflict of personal pecuniary interest. The court is

uncertain that even that type of combination would fall within the scope of circumstances identified by the Court in *Cronic*, but need not consider the matter further. As discussed above, the evidence has not established that Attorney Foley had a conflict of interest at the time of Defendant-Petitioner's sentencing.

C. Ineffective Assistance of Counsel for Failure to Offer a Sentencing Defense

Finally, the court turns to Defendant-Petitioner's claim that Attorney Foley's objectively deficient performance at sentencing was so prejudicial as to undermine the validity of the sentence imposed by the court. Specifically, Defendant-Petitioner argues there is a reasonable probability that had Attorney Foley obtained a psychological evaluation and offered it at sentencing, the court would have imposed a lesser sentence. Defendant-Petitioner has argued that such a psychological evaluation would have resulted in a finding that Defendant-Petitioner would have had a low risk of recidivism, not that Defendant-Petitioner suffered mental health issues that prevented him from understanding the illegality of his conduct towards the minor victim or participating in his defense. He cites statements made by Judge Ponsor during the sentencing about petitioner's danger as a persistent offender and argues a psychological evaluation would likely have established that he was at low risk of reoffending and could probably be successfully supervised in the community.

The Supreme Court laid out the standard for evaluating such an argument in *Strickland v. Washington*. 466 U.S. 668 (1984). As established in *Strickland*, a petitioner "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. An attorney's performance is deficient only where there were errors "so serious as to deprive the defendant" of a fair and reliable proceeding. *Id.* Thus, Defendant-Petitioner can only succeed with this argument if the court concludes both that there was a deficient performance and that the deficiency prejudiced the defense. With hindsight, it is clear that Attorney Foley's failure to obtain a timely evaluation was a significant mistake, but that is not the proper vantage from which to judge

9

his actions. In fact, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 689. Without the benefit of hindsight, specifically the knowledge that Attorney Foley's continuance request would be denied, it is less clear that his performance was deficient. Defendant-Petitioner's argument raises some interesting questions about how to judge an attorney's tardy action when, depending on the outcome of a single discretionary decision by the court, the tardiness is rendered either a routine delay or an irrevocable mistake. Though these issues are interesting, they do not warrant the court's further attention because there is not a reasonable probability that the submission of a psychological evaluation of Defendant-Petitioner would have resulted in a lower sentence.

Judge Ponsor stated clearly that he based his sentence on "the course of conduct that [Defendant-Petitioner] engaged in and because of the rather sophomoric and pretentious and obliquely and carefully self-justifying little speech we just heard." (Sent'g Trans., Dkt. No. 99 at 90. While Attorney Foley would have been able to make a stronger argument regarding Defendant-Petitioner's low risk of recidivism he had obtained a psychological report before sentencing, generalized concerns about recidivism did not play a significant role in Judge Ponsor's sentencing decision. Such a report would have done nothing to change Defendant-Petitioner's conduct nor would it have prevented Defendant-Petitioner from delivering the statements he wished to deliver to the court; statements Attorney Foley had advised him against making, but could not prevent.

### IV. CONCLUSION

For the foregoing reasons, Defendant-Petitioner's 2255 petition and motion to vacate (Dkt. No. 126) is denied.

It is So Ordered.

                                                      /s/ Mark G. Mastroianni
                                                      MARK G. MASTROIANNI
                                                      United States District Judge